**Byron WELBORN, Appellant,**

v.

**KITCHEN–QUIP FINANCE COMPANY, Inc., Appellee.**

**No. 4254.**

Court of Civil Appeals of Texas.

Eastland.

Oct. 25, 1968.

Rehearing Denied Nov. 15, 1968.

D. Dalford Todd, Dallas, for appellant.

Weinberg & Sandoloski, Sandy M. Sandoloski, Dallas, for appellee.

GRISSOM, Chief Justice.

Byron Welborn sold merchandise for Colonial Products, Inc., taking notes for the purchase price which were secured by mortgages on the things he sold. He sold the installment contracts containing said notes and mortgages to Kitchen-Quip Finance, Inc., and guaranteed payment of the notes. Welborn's written contract with Kitchen-Quip contained his guaranty of payment and provided that upon breach of any warranty he would repurchase said instruments for the amounts owing thereon, plus costs and expenses. Some of the purchasers failed to pay their notes and Kitchen-Quip instituted this suit against Welborn on his guaranty. Plaintiff attached to its petition copies of the installment contracts, including said notes and mortgages, and the contract between Welborn and Kitchen-Quip, all of which showed Welborn was the franchised dealer for Colonial Products, Inc., and that Welborn had transferred the notes to Kitchen-Quip and guaranteed their payment.

Welborn answered that he was not indebted to Kitchen-Quip by reason of the fraud of Rike, "who represented Colonial Products"; that Rike had represented to Welborn that purchasers from him, who paid their accounts, could buy merchandise at a discount in stores to be opened by a savings club; that such stores were never opened and for that reason the purchasers refused to pay their notes, wherefore, Welborn contended, he was not liable to Kitchen-Quip on his guaranty. He alleged that Rike represented Colonial Products and that the contracts sued upon "were based upon the representations made by Colonial Products". Welborn alleged that Kitchen-Quip, Saladmaster, and Colony House, Inc., the latter two, along with Colonial Products, being made cross defendants by Welborn, were liable for the fraud of Rike, because they were related corporations. Welborn alleged that Rike represented to him that if he would execute contracts to represent Colonial Products and their products, "which were purchased through Saladmaster", that purchasers from him could obtain such discount.

In answer to Kitchen-Quip's motion for a summary judgment, Welborn alleged that Kitchen-Quip was liable for Rike's misrepresentation "in that the defendant was induced to enter into a contract with plaintiff and with Colony House, Inc. and Colonial Products, Inc. as well as Saladmaster, Inc., all sisters and parent companies to the plaintiff herein, and had not all parties mentioned misrepresented and led defendant into believing that as a part of the contract sued on—defendant, and those dealing with him as purchasers of Colony House Products, would receive benefits from member stores—" etc. But Welborn swore only that he entered into a contract with Colonial Products, Inc.,

"a sister corporation to the plaintiff" to be a franchised dealer for Colonial Products, Inc., "a sister corporation of plaintiff, Colonial Products, Inc. and Saladmaster, Inc.," wherein it was agreed that he would sell Colonial Products and that purchasers from him would be permitted to buy merchandise at discount from stores to be established; that such stores were not opened and therefore the purchasers refused to pay their notes; that plaintiff was suing upon contracts induced by the fraud of Rike and that Kitchen-Quip, "as a member of said family of corporations", was liable for Rike's fraud. Said cross defendants also filed a motion for summary judgment and attached thereto the affidavit of Lemmons that there never was any connection between the other named companies and Colonial Products, Inc.; that none of them had overlapping officers, directors or stockholders with Colonial Products, Inc., and that no representative of any of said companies, other than Colonial Products, Inc., ever made such a representation to Welborn nor ratified or confirmed such an agreement. Kitchen-Quip attached to its motion the affidavit of its Vice President that there was no connection between it and Colonial Products, Inc.; that there was no overlapping of directors, officers or stockholders; that Kitchen-Quip never owned any interest in nor had any association with Colonial Products, Inc., and was not a party to or connected with any contract between Colonial Products, Inc., and Welborn and had never made any agreement with Welborn other than that contained in the written contracts sued upon. Welborn answered the cross defendant's motion for summary judgment and attached thereto his affidavit concerning the misrepresentation of Rike, "who was entailed in business by Harry Lemmons, an officer and stockholder in Colony House, Inc., Saladmaster Corporation, Kitchen-Quip Finance Company; that he was connected with all of said companies—"; that Lemmons set up offices for Rike to enable Rike to make contracts with Welborn "to do business with Colonial Products, Inc., for the sale of the products of Colonial Products, Inc.," and arranged financing through Kitchen-Quip. He then alleged that Lemmons knew, or should have known, that Rike could not be relied upon and that Lemmon enabled Rike to enter into contracts with Welborn and, as a result, Welborn made contracts relying upon the representations of Rike that such stores would be opened and that all parties, except Welborn, knew that Rike could not be trusted.

The only defense asserted to the written contracts which Kitchen-Quip sued on and the only cause of action against the cross defendants asserted by Welborn were based on their inferred liability for Rike's misrepresentation because he was the agent of Colonial Products, Inc., and the other corporations were sister corporations. Welborn swore to no fact that would make them liable for Rike's representation. The affidavits supporting appellee's motions state directly and positively that Rike was not their employee or agent and that there was no connection between them and Rike or his employer, Colonial Products Company, Inc.

Facts sworn to by Welborn constitute no defense to the written contracts sued upon. The facts essential to Welborn's liability as guarantor of payment of said notes are undisputed. He did not swear to facts which, if true, would establish liability of any of appellees for Rike's misrepresentation. Appellees swore to facts which show they were not liable. We, therefore, conclude that the court did not err in rendering summary judgment for the plaintiff and cross defendants. State v. Swift & Co., Tex.Civ.App., 187 S.W.2d 127 (WR). Appellant, of course, does not contend that the court erred in rendering judgment for him against Colonial Products, Inc. for $3,056.-47. The judgment is affirmed.